No. 23-1091

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA

CONSUMERS' RESEARCH, ET AL.,
*Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION, ET AL.,
*Respondents.*

On Petition for Review of an Order of
the FCC; FCC-DA-23-216

AMICUS CURIAE BRIEF OF PUBLIC KNOWLEDGE IN SUPPORT
OF RESPONDENTS

HAROLD FELD
    *COUNSEL OF RECORD*
GREGORY GUICE
    *OF COUNSEL*
PUBLIC KNOWLEDGE
1818 N ST. NW
SUITE 410
WASHINGTON, D.C. 20036
(202) 861-0020
hfeld@publicknowledge.org

**CERTIFICATE AS TO PARTIES, RULINGS, & RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), amici curiae certify as following:

> **A. Parties and Amici.** Petitioners are Consumers' Research; Cause Based Commerce, Inc.; Edward J. Blum; Kersten Conway; Suzanne Bettac; Robert Kull; Kwang Ja Kirby; Tom Kirby; Joseph Bayly; Jeremy Roth; Deanna Roth; Lynn Gibbs; Paul Gibbs; and Rhonda Thomas.

> Respondents are the Federal Communications Commission and the United States of America.

> Intervenors for Respondents are Competitive Carriers Association; National Telecommunications Cooperative Association; Schools, Health & Libraries Broadband Coalition; The Benton Institute for Broadband & Society; USTelecom - The Broadband Association; Center for Media Justice; and National Digital Inclusion Alliance.

> Amici Curiae for Respondent are Robert Frieden, Academy and Emeritus Professor of Telecommunications and Law, Pennsylvania State University, and via this brief, Public Knowledge.

> **B. Rulings Under Review.** Under review is the final order of the Federal Communications Commission deeming approved the Proposed Second Quarter 2023 Universal Service Contribution Factor, CC Docket No. 96-45, DA 23-216 (Mar. 14, 2023).

> **C. Related Cases.** To the knowledge of counsel, there are no related cases challenging the Second Quarter 2023 Universal Service Contribution Factor currently pending in this Court or in any other court. Petitioners have challenged other contribution factors as detailed in their brief.[1]

---

[1] Petitioner's Brief at ii.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Circuit Rule 26.1, amicus curiae states that it does not have a parent corporation, and no publicly-held corporation owns a 10% or greater ownership interest in it.

## CERTIFICATE AS TO CIRCUIT RULE 29(d)

Public Knowledge's brief uniquely provides a detailed analysis of the relationship between the FCC and USAC. The brief explains the 1996 statutory scheme, and how the Administration of the fund by USAC and the FCC conforms with the statute, the Constitution, and administrative law. Versions of this brief have been submitted in similar cases in the Sixth and Fifth Circuit Courts of Appeal. *Consumers' Rsch. v. FCC*, 67 F.4th 773 (6th Cir. 2023); *Consumers' Rsch. v. FCC*, 63 F.4th 441 (5th Cir. 2023) (*reh'g en banc granted, opinion vacated*).

/s/ *Harold Feld*
Harold Feld
*Counsel of Record*
PUBLIC KNOWLEDGE

iii

## TABLE OF CONTENTS

**CERTIFICATE AS TO PARTIES, RULINGS, & RELATED CASES** ......................................................................................... ii

**CORPORATE DISCLOSURE STATEMENT** ................................... iii

**CERTIFICATE AS TO CIRCUIT RULE 29(d)** ................................ iii

**TABLE OF AUTHORITIES** ....................................................... v

**INTEREST OF AMICUS CURIAE** ............................................. 1

**SUMMARY OF THE ARGUMENT** ............................................ 3

**ARGUMENT** .......................................................................... 4

**I.    THROUGH THE TELECOMMUNICATIONS ACT OF 1996, CONGRESS MADE UNIVERSAL SERVICE SUPPORT EXPLICIT BY ESTABLISHING THE DEFINITION OF UNIVERSAL SERVICE, THE PURPOSE FOR SUPPORT, AND HOW TO COLLECT FUNDING.** ......................................... 4

**II.   THE INTERACTION AND ADMINISTRATION OF USF BY THE FCC AND USAC CLEARLY DEMONSTRATES THE FCC RETAINS CONTROL OVER USF AND USAC ACTS IN A MINISTERIAL CAPACITY.** ....................................... 9

    **A.    The Roles of the FCC and USAC Clarified** ................... 9

    **B.    Statutory Limitations on Participation in USF** .......... 12

**III.   CONCLUSION** .............................................................. 16

**CERTIFICATE OF COMPLIANCE** .......................................... 18

**CERTIFICATE OF SERVICE** .................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Mozilla Corp. v. Fed. Commc'n Comm'n*, 940 F.3d 1, 109-113 (D.C. Cir. 2019) ................................................................................................ 4

*Rural Tel. Coalition v. FCC*, 838 F.2d 1307 ............................................. 7

## Statutes

12 U.S.C. § 1707(b) ............................................................................ 15

20 U.S.C. § 1091 ................................................................................ 14

214(e)(1) .......................................................................................... 13

254(h)(2)(A) ...................................................................................... 6

47 U.S.C. § 151 .................................................................................. 4

47 U.S.C. § 214 (e)(2) ......................................................................... 13

47 U.S.C. § 254(c)(1) .......................................................................... 6

47 U.S.C. § 254(c)(1)-(3) ..................................................................... 6

47 U.S.C. § 254(d) .............................................................................. 7

47 U.S.C. § 254(j) ............................................................................... 7

47 U.S.C. § 302a ................................................................................ 14

47 U.S.C. § 309(j)(8)(G) ...................................................................... 14

47 U.S.C. §§ 254(e) ............................................................................ 13

47 U.S.C. §§ 254(h)(1)(A)-(B) .............................................................. 6

47 U.S.C.§ 254(h)(7) ........................................................................... 13

Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) ................................................................................... 5

## Administrative Materials

*Amendment of Part 67 of the Commission's Rules and Establishment of a Joint Board,* 96 F.C.C.2d 781 ............................................. 7

*Changes to the Board of Directors of the National Exchange Carrier Association, Inc. and Federal-State Joint Board on Universal Service, Report and Order and Second Order on Reconsideration, 12 FCC Rcd. 18400* ..................................................................................... 10

*Third Report and Order, CC Docket No. 97-21, Fourth Order on Reconsideration in CC Docket No. 97-21 and Eighth Order on Reconsideration in CC Docket No. 96-45, 13 FCC Rcd. 25058*............ 10

*Universal Service Contribution Methodology*, et. al., WC Docket No. 06-12, Report and Order and Notice of Proposed Rulemaking, 21 FCC Rcd. 7518 (2006)........................................................................ 8

## Regulations

47 C.F.R. § 54.702(c) ............................................................... 10

47 C.F.R. § 8.1........................................................................... 8

## Other Authorities

**CORES registration**............................................................... **15**

FCC Form 499 Telecommunications Reporting Worksheet.................. 10

Form 498 Instructions and Form ............................................... 15

Memorandum of Understanding Between the Federal Communications Commission and the Universal Service Administrative Company..... 10

Rahul Tongia, Ernest J. Wilson III, *The Flip Side of Metcalfe's* ............. 4

*Universal Service Fund: Background and Options for Reform*, Congressional Research Service ............................................... 5

vi

## INTEREST OF AMICUS CURIAE[2]

Public Knowledge is a nonprofit technology policy organization that promotes freedom of expression, an open Internet, and access to affordable communications tools and creative works. As part of that mission, Public Knowledge advocates on behalf of consumers promoting policies to ensure the ubiquitous availability of robust and affordable broadband service to all Americans. Public Knowledge's advocacy is undertaken through providing comment to the Federal Communications Commission (FCC), the National Telecommunications and Information Administration, Congress and other federal and state policymakers on its views on how to promote access to these essential services. As it relates to this case, Public Knowledge has regularly filed comments in the FCC's proceedings concerning the universal service fund (USF) and has a deep understanding of the USF program.

---

[2]     This brief is submitted under Fed. R. App. P. 29 with the consent of all parties. Undersigned counsel for amicus curiae certifies that this brief was not authored in whole or in part by counsel for any of the parties; no party or party's counsel contributed money for preparing or submitting this brief; and no one other than amicus curiae and its counsel have contributed money for preparing or submitting this brief.

1

Petitioners are asking this Court to overturn a funding structure for America's universal service objectives that was established by Congress in 1996. Given Public Knowledge's engagement on these issues over the past twenty years, it is well positioned to offer this Court an informed perspective on the FCC's work to advance this Congressional directive and the roles of the FCC and Universal Service Administrative Company ("USAC") in administering the programs established by the FCC to implement the statutory mandate. This amicus focuses on the period from 1997—the year in which the FCC began the process of effectuating the Congressionally-mandated, explicit support mechanism for the USF—to the present day. Specifically, this filing briefly discusses: (i) the Telecommunications Act of 1996's establishment of universal service in Section 254 and (ii) the roles of the FCC and USAC in administering the USF program. Public Knowledge has both a strong interest and significant expertise in these subjects.

## SUMMARY OF THE ARGUMENT

The Telecommunications Act of 1996 established the framework for universal service, defining its scope, purpose, and funding mechanisms. Contrary to Petitioners' assertions, the Universal Service Administrative Company (USAC) administers the program under the guidance, active supervision and control of the FCC. Congress provided clear definitions and parameters within the Act to guide the FCC's administration of the USF and provided for ongoing development and modification of the program as the communications needs of the country evolved, which includes public input. The FCC's role is not merely, as Petitioners misstate, ministerial; it actively oversees, sets policies, and ensures the program's alignment with the Congressional intent to advance universal service. As the brief establishes through a factual analysis of the history of our universal service policy in the United States, this is an appropriate delegation by Congress to an expert agency, the FCC, to achieve our national goal of universal service.

3

# ARGUMENT

I.  **THROUGH THE TELECOMMUNICATIONS ACT OF 1996, CONGRESS MADE UNIVERSAL SERVICE SUPPORT EXPLICIT BY ESTABLISHING THE DEFINITION OF UNIVERSAL SERVICE, THE PURPOSE FOR SUPPORT, AND HOW TO COLLECT FUNDING.**

Universal service has been a telecommunications policy objective since the earliest days of the first communications networks. Each generation has understood that these networks—from voice, to data processing, to the modern wireline and wireless broadband networks—are essential services for participation in our economy.[3] Making these services universally available is not simply about ensuring everyone has access to telecommunications services, although this is an important goal in itself. As a federal policy matter, universal service is also about the important economic and educational benefits, as well as other opportunities, that having access to communications service provides.[4]

---

[3] *See*, Rahul Tongia, Ernest J. Wilson III, *The Flip Side of Metcalfe's Law: Multiple and Growing Costs of Network Exclusion*, 5 International Journal of Communication 665 (2011) (*explaining* that as more people gain access to broadband internet service and participate in the digital side of society, everyone benefits. Additionally, "as a network grows in size and value, those outside the network face growing disparities.")

[4] 47 U.S.C. § 151; *Mozilla Corp. v. Fed. Commc'n Comm'n*, 940 F.3d 1, 109-113 (D.C. Cir. 2019) (*per curiam*).

4

Under the Communications Act of 1934, universal service was addressed through an implicit support mechanism system of cross subsidies to expand the network and address universal service goals. This cross-subsidization was built into the rate structure for phone service by shifting costs and using profits earned in more densely-populated urban areas to subsidize the wiring and operational costs for the less populous, higher cost rural areas.[5] With the introduction of greater competition in the long distance market, the cross-subsidization structure was no longer able to be maintained. The FCC took interim steps to replace the support, but it was Congress that ultimately stepped in to provide the current universal service mechanism to achieve our Nation's universal service objectives.

In the Telecommunications Act of 1996, Congress chose to create an explicit support mechanism through the adoption of Section 254.[6] Under Section 254, Congress defined universal service as "an evolving

---

[5] *Universal Service Fund: Background and Options for Reform*, Congressional Research Service, at 2, available at https://www.everycrsreport.com/files/20111025_RL33979_b2c5bfe9f6d8 7f0108c6950bd9df0435d58bd31c.pdf (2011).
[6] Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996). The 1996 Act amended the Communications Act of 1934. 47 U.S.C. § 151, *et seq*.

level of telecommunications services that the Commission shall establish periodically under this section, taking into account advances in telecommunications and information technologies and services."[7] Congress directed the FCC to consider specific factors in establishing and modifying that definition over time, including the extent to which services being considered by the FCC for inclusion as a supported service are "essential to education, public health, or public safety;" and "have, through the operation of market choices by customers, been subscribed to by a substantial majority of residential customers."[8]

Having defined what universal service is and concluding that the definition of it needed to evolve over time consistent with the principles and criteria in 254(c)(1), Congress provided additional requirements for the FCC to comply with in funding provided to providers building networks in rural areas, schools, libraries, and rural health care providers[9] and made clear that the FCC's already-established Lifeline program, which assists low-income families, was not affected by the

---

[7] 47 U.S.C. § 254(c)(1).

[8] 47 U.S.C. § 254(c)(1). Other criteria are enumerated in the statute for the FCC to consider as it evolves the definition over time. *See generally*, 47 U.S.C. § 254(c)(1)-(3).

[9] 47 U.S.C. §§ 254(h)(1)(A)-(B), 254(h)(2)(A).

newly adopted provisions of Section 254.[10] It is worth noting that in

addition to the Lifeline program, which the FCC created under its

authority as outline in the Communications Act of 1934, the FCC also

created the predecessor to the high-cost fund under its own authority

following the dissolution of AT&T, a decision that this Court of Appeals

upheld.[11]

     To fund the universal service programs with a "specific,

predictable, and sufficient mechanism established by the Commission to

preserve and advance universal service," Congress mandated "every

telecommunications carrier," and "any other provider of

telecommunications" that the FCC determines should, as the public

interest requires, to contribute to the universal service fund.[12] Here

again, Congress explicitly instructed the FCC to collect funds in a

---

[10] 47 U.S.C. § 254(j).
[11] *Rural Tel. Coalition v. FCC*, 838 F.2d 1307 (D.C. Cir. 1988). The FCC took this action under it Section 1 authority (47 U.S.C. § 151) stating that creating a "Federal Universal Service Fund" would "ensure that telephone rates are within the means of the average subscriber in all areas of the country, thus providing a foundation on which the states can build to develop programs tailored to their individual needs." *Id.* at 1312 (*citing Amendment of Part 67 of the Commission's Rules and Establishment of a Joint Board,* 96 F.C.C.2d 781, 795) (1984)).
[12] 47 U.S.C. § 254(d).

sufficient and predictable manner from and to undertake ongoing assessments to determine whether other providers of telecommunications should contribute. In rare instances, the FCC has expanded the list of contributing entities, such as the extension of a USF contribution obligation to certain providers of Voice over Internet Protocol (VoIP) services.[13] At the time, the FCC's guiding principle for requiring VoIP providers to contribute to USF was that the public interest requires providers who benefit from universal service through their interconnection with the public switched telephone network ("PSTN") to also share in the burden of funding the USF.[14]

Congress' statutory scheme, when viewed in the context of our evolving universal service policy over the preceding decades, demonstrates that our communications networks are ever changing. As such, Congress empowered the FCC, the expert agency, to oversee and

---

[13] The FCC defines interconnected VoIP service as "interconnected VoIP services" as "those VoIP services that: (1) enable real-time, two-way voice communications; (2) require a broadband connection from the user's location; (3) require IP-compatible customer premises equipment; and (4) permit users to receive calls from and terminate calls to the PSTN." 47 C.F.R. § 8.1

[14] *Universal Service Contribution Methodology*, et. al., WC Docket No. 06-12, Report and Order and Notice of Proposed Rulemaking, 21 FCC Rcd. 7518 (2006).

8

advance our Nation's universal service policy so that it will keep pace with that evolution.

## II. THE INTERACTION AND ADMINISTRATION OF USF BY THE FCC AND USAC CLEARLY DEMONSTRATES THE FCC RETAINS CONTROL OVER USF AND USAC ACTS IN A MINISTERIAL CAPACITY.

Petitioners brief substantially mischaracterizes the roles that the FCC and USAC perform in administering the universal service program. Other than its statement that USAC is an independent subsidiary of the National Exchange Carrier Association, Inc. there is not much else that is accurate in its summary of the FCC's or USAC's role. This leads to the Petitioners' erroneous conclusion that the administration of the universal service fund has been inappropriately delegated to a private entity by the FCC. [15]

### A.    The Roles of the FCC and USAC Clarified

As outlined in the FCC's Memorandum of Understanding between the FCC and USAC, in 1998 USAC was designated as the competitively neutral entity established to administer the USF.[16] That administration

---

[15] Petitioner's Brief at 13.
[16] Memorandum of Understanding Between the Federal Communications Commission and the Universal Service Administrative

9

is done in accordance with the universal service provisions of the statute as interpreted by the FCC's rules implementing those provisions.[17] USAC has no authority to make policy; nor does USAC have authority to interpret rules, regulations, or Congressional intent.[18] Instead, if USAC needs an interpretation of a rule or policy, it is required to ask the FCC for guidance.[19] Moreover, even the data on revenue collected by USAC is done pursuant to a form that is developed and adopted by the FCC and approved by the Office of Management and Budget.[20] As these and other facts covered in the Memorandum of Understanding between the parties demonstrate, it is USAC that is the

---

Company, available at https://transition.fcc.gov/omd/usac-mou.pdf. (2016). *See also, See Changes to the Board of Directors of the National Exchange Carrier Association, Inc. and Federal-State Joint Board on Universal Service, Report and Order and Second Order on Reconsideration, 12 FCC Rcd. 18400, (1997); Third Report and Order, CC Docket No. 97-21, Fourth Order on Reconsideration in CC Docket No. 97-21 and Eighth Order on Reconsideration in CC Docket No. 96-45, 13 FCC Rcd. 25058, (1998).*

[17] *Id.*

[18] 47 C.F.R. § 54.702(c).

[19] *Id.*

[20] *See e.g.*, FCC Form 499 Telecommunications Reporting Worksheet, available at https://www.fcc.gov/document/telecommunications-reporting-worksheets-and-accompanying-instructions/form. Incidentally, this form is also used by other administrators of programs for the telecommunications relay services

entity performing ministerial functions, not the FCC, contrary to the assertion by Petitioners.[21]

Petitioners also contend that USAC is "charged with establishing the budget for the Universal Service Fund" and that each quarter "USAC's Board announces a proposed contribution amount – essentially how much money USAC wants for universal service for the next quarter."[22] This reveals the Petitioner's fundamental misunderstanding about how the USF works.

The FCC is actually the entity charged with setting the budget for USF. It does this through the Administrative Procedure Act ("APA") notice-and-comment rulemaking process.[23] Through the APA process,

---

[21] Petitioner Brief at 13, 14
[22] Petitioner's Brief at 12-13.
[23] The FCC organizes the programmatic work for the four disbursement programs and the contribution methodology into discrete dockets for policymaking which include as well as USAC oversight and appeals as part of each of the dockets. *See e.g.*, High-Cost Universal Support program, also known as the Connect America Fund, WC Docket No. 10-90 (over 980 actions to date in that docket since its inception in 2010), WC Docket 05-337 (over 295 actions in that docket since its inception in 2005), and CC Docket No. 96-45 (over 2530 action in that docket since its inception in 1996). A chronology of decisions for each of the four Universal Service programs can also be found on the FCC's website (High Cost/Connect America Fund is available at https://www.fcc.gov/general/universal-service-high-cost-areas-connect-

11

the FCC defines the programmatic rules, sets budgets for the four

disbursement programs, makes modifications as needed, grants waivers

to parties that meet the waiver standard, and provides clarifications of

its rules.[24] As demonstrated by a review of each of the dockets the FCC

has established for the four disbursement programs, the FCC remains

in control of every aspect of the USF.[25]

### B.    Statutory Limitations on Participation in USF

As to participation in USF, Petitioners mischaracterize what the

plain language of the statute states as well as the operation of USF

---

america-fund; Schools and Libraries fund is available at
https://www.fcc.gov/general/e-rate-schools-libraries-usf-program; Rural
Health Care Fund is available at https://www.fcc.gov/general/rural-
health-care-program; Lifeline Fund is available at
https://www.fcc.gov/general/lifeline-program-low-income-consumers;
and the USF Contribution Methodology is available at
https://www.fcc.gov/general/contribution-methodology-administrative-
filings.

[24] *See* Connect America Fund: A National Broadband Plan for Our
Future High-Cost Universal Service Support, WC Docket No. 10-90;
Schools and Libraries Service Support Mechanism, CC Docket No. 02-6;
Rural Health Care Support Mechanism, WC Docket No. 02-60; Lifeline
and Link Up Reform and Modernization, WC Docket 11-42.

[25] *Id.*

when Petitioner states that "neither the specific recipients nor the specific beneficiaries of the fund are named in the Act."[26]

Surely, Petitioners cannot mean the statute is invalid because Congress failed to name, for example, each of the 86 schools in the New Orleans school district (and every other school in the Nation) that benefit from the USF, and then failed to update that list anytime a new public or non-profit private school was added or removed.

Rather, Congress adopted critical definitions that set guardrails on which *classes* of entities are eligible as recipients and beneficiaries. Congress directed that only "eligible telecommunications carriers" ("ETC"), that is a carrier providing the services to eligible beneficiaries, can receive support, which is a defined term in the statute.[27] ETCs are individual carriers licensed by states.[28] In addition, Congress established definitions for "schools," "libraries," and "health care providers" defining those classes of potential beneficiaries in the statute.[29]

---

[26] Petitioner's Brief at 14.
[27] 47 U.S.C. §§ 254(e), 214(e)(1).
[28] 47 U.S.C. § 214 (e)(2).
[29] 47 U.S.C.§ 254(h)(7).

13

This approach is consistent with other statutory regimes where Congress defines the class and leaves implementing policy consistent with that definition to the agency. In fact, the FCC's own statute is replete with Congressionally-defined discrete classes of entities that are within the scope of a statutory provision. For example, the FCC is required to protect wireless licensees from harmful interference[30] and is authorized to distribute auction money to licensees that choose to participate in an incentive auction.[31]

Other federal agencies also operate with statutory provisions for discrete classes of eligible entities and people. Would the Veterans Administration, for example, only be able to accept veterans as recipients of hospital care if Congress specifically designated each veteran by name? Of course not. Would Congress need to enumerate annually each student eligible to receive financial aid to attend college?[32] No. Would Congress need to list every potential first-time home buyer under the definition of "mortgagor" so the U.S. Department

---

[30] 47 U.S.C. § 302a.
[31] 47 U.S.C. § 309(j)(8)(G).
[32] 20 U.S.C. § 1091.

14

of Housing and Urban Development could administer its first-time home buyer program?[33] Again, no.

Finally, in terms of the operation of the statute and the FCC rules to ensure compliance with Congress' directive on eligible participants, the FCC established a process by which potential participants in the program can apply for support, which they do by first registering with the FCC through the Commission Registration System (CORES)[34] and then applying through the FCC for a 498 identification number.[35] Once an entity has that identification number, then it can begin the process with USAC of enrolling for the programmatic support it is eligible to receive.

When taken together, the above demonstrates that despite Petitioners contention to the contrary, there are guardrails on who can participate in USF that Congress defined for the FCC; consistent with that directive the FCC sets the terms under which the various USF programs operate, including the budget; and USAC merely administers

---

[33] 12 U.S.C. § 1707(b).
[34] CORES registration available at https://apps.fcc.gov/cores/userLogin.do.
[35] Form 498 Instructions and Form available at https://www.fcc.gov/document/fcc-form-498-instructions.

15

the program as defined by the FCC. It is, therefore, simply not the case that USAC is in charge and the FCC's role is ministerial.

## III.   CONCLUSION

Consistent with Congress' intent in 1996 to make explicit what had been an implicit support system, the FCC has worked over the subsequent 25 years to ensure that Congressional intent is reflected in its universal service program. As demonstrated in this filing, Congress provided the FCC with sufficient statutory language to define the purpose, scope and intent of the universal service mechanism contained in Section 254 of the Act. Moreover, Congress provided definitions to guide the FCC's understanding related to which entities are eligible to participate in the program. Further, as set forth in this brief, the FCC's oversight and policymaking functions demonstrates that far from the Petitioner's contention that the USF is run by a private entity, the FCC, an independent agency, is the entity that truly runs the universal service program. USAC merely performs ministerial functions. The FCC's management of the universal service program ensures that the program advances the mission of universal service, while also maintaining government oversight over this critical program.

16

Petitioners brief makes much of the fact that the universal service fund was "approaching $10 billion for 2021, which was roughly 25 times the FCC's entire annual budget."[36] A well-managed and efficiently administered program should strive for such low administrative overhead, but the larger point is that ensuring the United States has the communications networks necessary to promote a vibrant economy and afford all citizens the opportunities that these networks present is not an inexpensive proposition. Rather, it is an undertaking that requires expertise and a sufficient and predictable funding, which is exactly the purpose of the universal service program.

Respectfully submitted,

/s/ *Harold Feld*
Harold Feld
*Counsel of Record*
PUBLIC KNOWLEDGE
1818 N STREET, N.W.
WASHINGTON, D.C. 20036
(202) 559-1090
hfeld@publicknowledge.org

Dated: October 4, 2023

---

[36] Petitioner's Brief at 16.

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains <u>3142</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook (14-point).

Dated: October 4, 2023

<u>*/s/ Harold Feld*</u>
Harold Feld
*Counsel of Record*
PUBLIC KNOWLEDGE

18

## CERTIFICATE OF SERVICE

I certify that, on October 4, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the CM/ECF system, which will serve all parties, intervenors, and amici electronically.

Dated: October 4, 2023

/s/ *Harold Feld*
Public Knowledge